UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PATRICK A. CARLONE,                                    CIVIL NO. 13-783 (SRN/JSM)

          Plaintiff,

v.                                                    REPORT AND RECOMMENDATION

ASBESTOS WORKERS LOCAL 34, et al.,

          Defendants.


The above matter came before the undersigned Magistrate Judge of the District Court upon defendants' Motion for Sanctions and Attorney's Fees Pursuant to Rule 11 [Docket No. 35]; plaintiff's Motion for Employment [Docket No. 54]; plaintiff's Amended Complaint [Docket No. 55]; and plaintiff's Motion to Remove all of the Defendants' Exhibits [Docket No. 60].   Pro se plaintiff, Patrick A. Carlone appeared on his own behalf; Brendan D. Cummings, Esq. appeared on behalf of Asbestos Workers Local 34[1] and Roger LeClaire.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant Asbestos Workers Local 34 ("Union") is an unincorporated labor organization representing approximately 400 members performing mechanical

---

[1]      According to counsel for defendants, the proper name for "Asbestos Workers Local 34" is "Heat and Frost Insulators and Allied Workers Local 34."   Affidavit of Brendan D. Cummins in Support of Motion for Sanctions Under Rule 11 [Docket No. 38] ("Cummins Aff."), ¶ 1.

insulation work in Minnesota and western Wisconsin.  Cummins Aff., ¶ 2.  Defendant Roger LeClaire is the Union's elected recording secretary.  Id., ¶ 3.  Plaintiff Patrick Carlone was a member of the Union.  Id., ¶ 4.

On June 23, 2007, Carlone filed a charge of age and disability discrimination against the Union with the Equal Employment Opportunity Commission ("EEOC") and the St. Paul Department of Human Rights.  Cummins Aff., Ex. 1 (EEOC Determination and Notice of Charge); Plaintiff's Rebuttal to Defendant's Motions [Docket No. 48] ("Pl.'s Rebuttal"), Ex. 1 (State Charge and Determination).  Carlone alleged that he took leave from his job in December 2005, and informed the Union that he was able to return to work in January 2006, however, the Union failed to provide him with any jobs despite the fact that jobs were available.  Id. (Charge of Discrimination).  On March 18, 2008, the St. Paul Department of Human Rights found that there was probable cause regarding age discrimination but not based on disability discrimination.  Pl.'s Rebuttal, Ex. 1.  Notwithstanding the St. Paul Department of Human Rights' determination, on December 31, 2008, the EEOC concluded that the evidence obtained during its investigation did not establish violations of the Americans with Disabilities Act of 1990 or the Age Discrimination in Employment Act of 1967, as amended.  Cummins Aff., Ex. 1 (December 31, 2008 EEOC Determination); Pl.'s Rebuttal, Ex. 1.  In making this determination, the EEOC gave the substantial weight to the findings of the St. Paul Department of Human Rights.  Cummins Aff., Ex. 1.

On September 25, 2008, Carlone filed a charge with the National Labor Relations Board ("NLRB"), alleging that the Union unlawfully refused to refer him for work because of his age and disability.  Cummins Aff. Ex. 2 (Charge to the NLRB).  The NLRB

dismissed the charge on November 21, 2008, based on insufficient evidence of a violation.  Cummins Aff. Ex. 2 (NLRB Determination).  Carlone appealed the NLRB's dismissal of his charge, which was denied on February 19, 2009, because he failed to demonstrate any violation of the National Labor Relations Act ("NLRA").  Cummins Aff., Ex. 3 (NLRB Office of Appeals Decision).  The Office of Appeals noted that the Union was not an exclusive hiring hall, Carlone had quit a job previously referred to him, and he was issued a notice of withdrawal card in November 2006.  Id.  Subsequently, Carlone revoked the withdrawal card in order to obtain work and was told that to be returned to membership, he would have to pay membership dues that had accrued since his withdrawal.  Id.  The NLRB Office Appeals found that the Union followed standard and nondiscriminatory procedures with respect to Carlone.  Id.

On October 12, 2009, the Union settled a case with Carlone brought by him in Ramsey County District Court, involving a claim for the return of a fee he paid in 2007 related to a Union withdrawal card.  Defendants' Reply Memorandum of Law in Support of Their Motion for Sanctions Under Rule 11 ("Defs.' Reply") [Docket No. 49], p. 5; Cummins Aff. Ex. 4; see also Second Affidavit of Brendan D. Cummins in Support of Motion for Sanctions under Rule 11 [Docket No. 50], Ex. C.

In 2009, Carlone filed suit against the Union in the United States District Court, District of Minnesota.  See Civil No. 09-204 (JMR/FLN) ("Carlone I").  Carlone alleged that he made a complaint in November 2004 to a contractor, Gagnon, Inc., that the sheet metal he was being asked to work was too thick, and that by working with it, he was infringing on the sheet metal workers' trade.  See Carlone I Amended Complaint [Docket No. 6], ¶¶ 13-15.  Carlone asserted that Gagnon retaliated against him for

making the complaint by placing him in a position that required him to work at high elevations, which was difficult for him to do given his age, diabetes and asbestosis, and despite the fact that there were other jobs available that did not require working with heights. Id., ¶¶ 16, 17. After taking a medical layoff and filing the complaint against Gagnon, Carlone alleged that he was placed on a "do not hire" list by Gagnon, and the Union did not defend him in connection with this action. Id., ¶¶ 18-29. Carlone also alleged that between October 2005, through the filing of the suit in 2009, the Union referred others for employment, but refused to refer him for employment, and the Union caused him to be placed on the "do not for hire" lists with all of the Union's signatory contractors without his knowledge. Id., ¶¶ 32, 35, 36, 43. Carlone asserted the following claims in Carlone I against the Union: Employment Discrimination Because of Age (Count I), Employment Discrimination Because of Disability (Count II), Tortious Interference with Prospective Contractual Relations (Count III), Breach of Written Contract (Count IV), and Breach of Fair Duty of Representation (Count V). Counts III and V were dismissed on a motion to dismiss. See Carlone I, September 9, 2009 Order [Docket No. 26]. By stipulation of the parties, Counts I and II of the Amended Complaint were dismissed without prejudice. See Carlone I, December 15, 2009 Order [Docket No. 41]. This left only the breach of contract claim (Count IV). Carlone then filed a Second Amended Complaint in which the only claim he alleged was that the Union breached its bylaws and constitution by refusing and failing to (a) investigate his complaints against Gagnon; (b) challenge his placement on "do not hire" lists maintained by some or all of its signatory contractors; (c) defend him against contractors that placed him on "do not hire lists;" and (d) refer him to its signatory

contractors for employment at relevant times when such signatory contractors requested manpower or otherwise notified the Union of open positions. See Carlone I, Second Amended Complaint, ¶¶ 62-65. This remaining claim was dismissed on the grounds that while the claim had been cast as a breach of contract claim, it actually alleged a breach of the duty of fair representation and was time-barred. See Carlone I, May 28, 2010 Order [Docket No. 86], p. 8.[2] Further, the court concluded that even if the claim was framed as a breach of contract claim, the claim failed to allege facts showing a failure to allege a plausible entitlement to relief. Id. On July 14, 2010, the Eighth Circuit Court of Appeals dismissed Carlone's appeal. Cummins Aff., Exs. 6, 7.

Carlone also filed three complaints with the Office of Lawyers Professional Responsibility ("OLPR") against the Union's lawyer, Kelly Jeanetta, related to her representation of the Union against him. See Cummins Aff., Exs. 8 (February 8, 2010 Complaint); 9 (March 1, 2010 decision by OLPR); 11 (June 15, 2012 Complaint); 12 (June 21, 2012 decision by OLPR); 13 (June 25, 2012 Complaint); and 14 (June 28, 2012 decision by the OLPR).[3] No adverse action was taken by the OLPR against Jeanetta. Id.

---

[2]     Carlone v. International Ass'n of Heat and Frost Insulators and Allied Workers Local Union No. 34, NO. 09-CV-204 (JMR/FLN), 2010 WL 2195463 (D. Minn., May 28, 2010).

[3]     It also appeared that Carlone was making complaints with the OPLR against his pro bono counsel from Robins, Kaplan, Miller & Ciresi, however the OPLR treated the complaints as only against Jeanetta. Cummins Aff., Exs. 11 (June 15, 2012 Complaint); 12 (June 21, 2012 decision by OLPR); 13 (June 25, 2012 Complaint); and 14 (June 28, 2012 decision by the OLPR).

On May 31, 2012, Carlone filed a complaint with the FBI, making accusations of collusion with criminal intent against Jeanetta and his own pro bono attorneys from Robins, Kaplan, Miller & Ciresi.  Cummins Aff., Ex. 10.

On January 14, 2013, Carlone filed "Complaint for Arrest" with the FBI, seeking the arrest of Union officers, including defendant LeClaire, based on the discrimination shown against him and asserting that Union officers possessed loaded machine guns and should be considered "armed and dangerous."  Cummins Aff., Ex. 15.

On February 6, 2013, Carlone filed a suit in Ramsey County Conciliation Court claiming that the Union failed to properly manage his health and welfare plan.  Cummins Aff., Ex. 16 (February 6, 2013 Conciliation Complaint (62-CO-13-588)).  The Complaint was dismissed with prejudice on the basis that Carlone had failed to submit the necessary forms to receive benefits, and on the basis that he had named the wrong defendant, as the health and welfare trust appeared to be the correct defendant.  Cummins Aff., Ex. 17 (March 22, 2013 Order and March 28, 2013 Judgment).[4]

On March 5, 2013, the initial Complaint in this matter was filed by Carlone in Ramsey County Conciliation Court, in which Carlone only alleged that the "intentional negligence of the defendants" caused him to lose wages.  See Complaint [Docket No. 1].  Carlone did not set forth any facts to support his claim.  Id.  Defendants removed

---

[4]     On March 23, 2013, Carlone filed four "petition requests" in this same conciliation court matter, (1) requesting the court hold the Union and two of its officers in contempt for allegedly violating the Freedom of Information Act as it related to his subpoena request for documents; (2) requesting the court hold the Union's attorney in contempt of for claiming that Carlone tried to intimidate the defendants by informing the police that the defendants may be armed; (3) requesting the court hold the Union's attorney in contempt for asserting that Carlone brought his action against the wrong party; and (4) requesting the court hold the Union's attorney in contempt for requesting that Carlone's claim in the conciliation court matter and cases be dismissed.  Cummins Aff., Exs.20-23.

Carlone's suit to federal court and moved to dismiss his case for failure to state a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). See Docket Nos. 1, 4.

On March 23, 2013, Carlone filed a complaint with the OLPR against the Union's legal counsel, Brendan Cummins, alleging that Cummins failed to produce documents ordered by a court pursuant to a subpoena in the conciliation court matter, 62-CO-13-588. Cummins Aff., Ex. 25 (March 23, 2013 OPLR Complaint). The OPLR determined that neither an investigation nor discipline was warranted. Cummins Aff., Ex. 26 (April 5, 2013 decision by OPLR).

On March 25, 2013, Carlone filed five separate additional actions against the Union in Ramsey County Conciliation Court. Cummins Aff., Ex. 24. In all of these cases, Carlone's petitions for proceeding in forma pauperis were denied, and the cases were closed administratively. Id.

On April 18, 2013, defendants notified Carlone by letter that if he did not withdraw his Complaint in the instant lawsuit within 21 days, they would move to dismiss his Complaint and seek sanctions under Rule 11 of the Federal Rules of Civil Procedure, in the form of requiring Carlone to pay the attorneys' fees and costs they had incurred in defending the present action, and precluding Carlone from filing additional administrative or legal charges against defendants without leave of court. Cummins Aff., Ex. 27 (April 18, 2010 Letter from Cummins to Carlone).

On April 26, 2013, Carlone filed a Motion to Change Charge [Docket No. 16] in the present action, in which he asked to change the original charge of intentional negligence to a hate crime by a union black list. This Court denied that motion. See May 2, 2013 Order [Docket No. 21].

On June 25, 2013, this Court issued a Report and Recommendation [Docket No. 29], in the present action as to defendants' motion to dismiss, finding as follows:

> Carlone's Complaint consists solely of a "conclusory statement," which lacks the specificity required by the pleading standards set forth in Iqbal.[5] While a "'district court has the power to sua sponte dismiss a complaint'" when it was obvious that a plaintiff could not prevail on the facts alleged, (see Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991) (quoting Mildfelt v. Circuit Court, 827 F.2d 343, 345 (8th Cir. 1987) (per curiam)), here, where Carlone commenced his suit in state conciliation court and the same principles for pleading in federal court are not required, the Court believes that the better course of action is to give Carlone 30 days to file and serve an amended complaint that can survive the requirements of Iqbal
>
> Therefore, if Carlone elects to amend, he must comply with the basic pleading rules prescribed by Iqbal. In addition, Carlone must present his allegations in separate, serially numbered paragraphs, as required by Fed. R. Civ. P. 10(b). This new pleading must provide a much more complete and cogent statement of the specific facts on which Carlone's claims are based. Vague accusations will not suffice. Carlone must also clearly identify the specific legal basis for his claims against each defendant. In sum, if Carlone intends to continue to pursue this action, he will have to provide a clear and comprehensive description of what, specifically, each named defendant actually did, or failed to do, and he will have to describe how each defendant's acts or omissions allegedly violated his legal rights under some clearly identified provision [of] law.
>
> Therefore, within 30 days of the issuance of an order by the District Judge adopting this Report and Recommendation, Carlone shall serve and file an amended complaint that meets the requirements of this Report and Recommendation.  In the event that Carlone does not serve and file an amended complaint consistent with this Report and Recommendation, the Court will proceed to recommend dismissal of the suit.

---

[5]     Ashcroft v. Iqbal, 556 U.S. 662 (2009).

June 25, 2013 Report and Recommendation [Docket No. 29], pp. 5-6 (emphasis added).

On October 4, 2013, defendants filed the instant Motion for Sanctions and Attorney's Fees Pursuant to Rule 11.  On October 25, 2013, United States District Judge Susan R. Nelson issued an order adopting the Report and Recommendation in its entirety, stating:

> [T]he Court denies Defendants' Motion to Dismiss and Plaintiff's Motion/Injunction, and the Court grants Plaintiff 30 days to serve and file an amended complaint that satisfies federal pleading standards. The Court reiterates that, to survive a motion to dismiss in federal court, a complaint must contain "enough facts tostate a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Rather, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

October 25, 2013 Order [Docket No. 47], p. 4.  Judge Nelson then adopted verbatim this Court's instructions to Carlone to cure the pleading deficiencies of his Complaint. Id., pp. 4-5 (quoting portion of Report and Recommendation emphasized above). Finally, Judge Nelson informed Carlone that if he failed to comply with this Order, his case would be dismissed.  Id., p. 5 (citing Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991) (holding that "a district court sua sponte may dismiss a complaint under Rule 12(b)(6) as long as the dismissal does not precede service of process")).

On November 22, 2013, Carlone filed his Amended Complaint, which stated in its entirety:

> Plaintiffs' Amended Complaint is amended to state due to negligence by local 34 and Mr. Roger LeClaire caused the plaintiff to lose income in the month of July 2008 by not referring a union member in good standing with said union a referral for employment with a signatory union contractor, at a time when said union of local 34 and Mr. Roger LeClaire were referring non-union people and non-local 34 people for employment with signatory union contractors that were calling the union for insulators.

Docket No. 55.

On November 26, 2013, this Court heard defendants' motion for sanctions. Immediately following the hearing, the Court issued an Order stating that "[t]he parties shall not serve on the opposing party, or file with the Court, any further motions, pleadings or any other papers in this case until this Court issues its decision addressing Defendants' Motion for Sanctions and Attorney's Fees Pursuant to Rule 11 [Docket No. 35] and plaintiff's Amended Complaint [Docket No. 55]."  [Docket No. 58].

On November 27, 2013, Carlone filed a motion for an extension of time to file a new amended complaint.  See Docket No. 61].  The motion was denied by this Court pursuant to its Order dated November 26, 2013, and on the basis that Carlone had failed to provide any good cause as to why he needed more time to perfect his claims against defendants.  See December 6, 2013 Order [Docket No. 62].

On March 3, 2014, Carlone filed a new action in this District Court against the Union, asserting the claims of black list, conspiracy, trade infringement, discrimination, fraud, terroristic threats and malicious prosecution.  See Civil No. 14-579 (SRN/JSM), Complaint [Docket No. 1].  In particular, Carlone alleged: he was a victim of age

discrimination that started in 2005, which was proven in 2009 and continues to the present date; the Union discriminated against him by granting employment referrals to non-union members; the Union attempted to commit fraud against him by not informing him of his eligibility to receive health care insurance starting in 2003; the Union conspired to lapse him out of the Union by claiming that he did not pay dues, while at the same time refusing to provide him with employment; the Union committed fraud by not policing the health and welfare benefits that should have been paid into his trust accounts; the Union was teaching insulators how to violate the union trade agreement by cutting, bending and rolling sheet metal in "excess gauge of .016"; the Union "committed a terroristic threat" against him by claiming that he was harassing it for trying to get a job referral and for giving a ride to a process server to the Union Hall; the Union "committed fraud of malicious prosecution" by filing a no trespass charge with the police department, claiming that Carlone or his daughter would be arrested if they ever trespassed upon Union property; and as a result of the Union's negligence and discrimination, he has lost income of more than $58.00 per hour since 2007. Id., ¶¶ 1-11. Plaintiff also filed an Application to Proceed in District Court without Prepaying Fees or Costs. See Civil No. 14-579 (SRN/JSM), Docket No. 2.

On March 14, 2014 issued an Order stating:

> Having reviewed the Complaint in the instant suit and its similarity with the various claims made plaintiff in his many filings in Civil No. 13-783, it appears to the Court that this new suit against defendant is designed to circumvent the Order entered the Civil No. 13-783 and the relief sought by defendant in its sanctions motion.
>
> Therefore, in order to insure the orderly provision of justice, the Court finds it necessary and appropriate to stay all further proceedings in the present case, effective

immediately. See Link v. Wabash Railroad Co., 370 U.S. 626, 630-31 (1962) (recognizing that a federal court has the inherent authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases"). This case will remain stayed until the Court determines that the stay should be lifted. While the stay remains in effect, both plaintiff and defendant are barred from filing any further pleadings, motions, letters, or other papers in this case, unless otherwise expressly permitted (or required) by further order of the Court. If either party violates this directive, sanctions may be imposed.

Plaintiff's pending IFP application will remain under advisement until the stay order is lifted by the Court.

Civil No. 14-579 (SRN/JSM), March 14, 2014 Order [Docket No. 4].

On March 17, 2014, Carlone filed an Amended Complaint in Civil No. 14-579 (SRN/JSM), which was stricken by this Court pursuant to the March 14, 2014 Order. See Civil No. 14-579 (SRN/JSM), March 20, 2014 Order [Docket No. 7].

I.    **DISCUSSION**

Before this Court addresses defendants' motion for sanctions, it must first determine whether this suit should be dismissed for failure of Carlone to meet the requirements of Judge Nelson's Order with respect to his Amended Complaint.

A.    **Carlone's November 22, 2013 Amended Complaint Fails to State a Claim for Relief**

This Court finds that Carlone's Amended Complaint [Docket No. 55] completely failed to comply with the requirements of this Court's Report and Recommendation [Docket No. 29] and Judge Nelson's Order [Docket No 47], mandating that Carlone correct the deficiencies of his Conciliation Court complaint.

First, like the Conciliation Court complaint, the Amended Complaint only made a vague and conclusory accusation of negligence against both defendants.  It did not

"clearly identify the specific legal basis for his claims against each defendant," and it did not "provide a clear and comprehensive description of what, specifically, each named defendant actually did, or failed to do, and he will have to describe how each defendant's acts or omissions allegedly violated his legal rights under some clearly identified provision [of] law."  Order, pp. 4-5 (quoting Report and Recommendation, p. 6).  For example, in asserting a claim of negligence against both the Union and LeClaire, Carlone identified no duty that was owed to him by defendants.  See Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn. 1982) (finding that in order to maintain a claim for negligence, a plaintiff must establish the following familiar elements: 1) the existence of a duty; 2) breach of that duty; 3) proximate cause between the breach of duty and plaintiff's injury; and 4) actual injury to plaintiff).[6]

---

[6]     This Court cannot speculate on the source of any duty Carlone may have in mind to support his claim of negligence.  De Groff v. Las Vegas Metropolitan Police Dept., NO. 2:11-CV-02007-KJD, 2013 WL 1405848 at *3 n.3 (D. Nev. April 05, 2013) ("[P]ro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record. Accordingly, the Court will not speculate about what claims could be derived from the facts of Plaintiff's Complaint.") (citation and marks omitted).  However, the Court observes that to the extent that Carlone was attempting to assert a state law negligence claim based on the Union's duty of fair representation, such a claim is preempted under the NLRA.  See Vaca v. Sipes, 386 U.S. 171, 177 (1967) ("statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.  It is obvious that Owens' complaint alleged a breach by the Union of a duty grounded in federal statutes, and that federal law therefore governs his cause of action.") (citations omitted); see also Breininger v. Sheet Metal Workers Int't Ass'n Local Union No. 6, 493 U.S. 67, 89 (1989) (applying a union's duty of fair representation to the Union's operation of a hiring hall and finding that "a union does not shed its duty of fair representation merely because it is allocating job openings among competing applicants, something that might be seen as similar to what an employer does."); Patterson v. IATSE Local 13, 754 F. Supp.2d 1043, 1046 (D. Minn. 2010) ("Claims for violation of duties subsumed by the DFR are preempted.") (citations omitted).  Further, even if Carlone was asserting a breach of the Union's duty of fair representation, such a claim is barred by the applicable statute of limitations.  The statute of limitations for

> While a plaintiff need not set forth "detailed factual allegations," <u>Twombly</u>, 127 S.Ct. at 1964, or "specific facts" that describe the evidence to be presented, <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. <u>Twombly</u>, 127 S.Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," <u>Bediako</u>, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. <u>Rios v. City of Del Rio</u>, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

<u>Gregory v. Dillard's, Inc.</u>, 565 F.3d 464, 473 (8th Cir. 2009).

Further, while <u>pro</u> <u>se</u> complaints are held to less stringent standards than formal pleadings drafted by lawyers, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam), and "are to be construed liberally, <u>see</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), they still must allege sufficient facts to support the claims advanced." <u>Stone v. Harry</u>, 364 F.3d 912, 914 (8th Cir. 2004); <u>see also</u> <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985) (rejecting "merely general and conclusory allegations," and requiring that a "<u>pro</u> <u>se</u> complaint must contain specific facts supporting its conclusions."). As the Eighth Circuit explained:

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way

---

bringing a fair representation claim is six months. <u>Scott v. United Auto. Workers</u>, 242 F.3d 837, 839 (8th Cir. 2001). The statute of limitations begins to run when the employee knows or reasonably should have known of the union's alleged breach of the duty of fair representation. <u>Id.</u> (citing <u>Evans v. Northwest Airlines, Inc.</u>, 29 F.3d 438, 441 (8th Cir. 1994)). It is implausible that Carlone could not have reasonably known that about the Union's referral of jobs to non-union members years before initiating the present action or failure to refer jobs to him. Indeed, the court in Carlone I concluded that the breach of the duty of fair representation claim, which included allegations that the Union was not referring him for jobs, was time-barred.

that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

Stone, 364 F.3d at 915.  Consequently, a court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." Id. (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)).

Because Carlone's Amended Complaint still fails to state a viable claim for relief, the Court recommends that the Amended Complaint be dismissed.

## B.    Defendants' Rule 11 Motion for Sanctions

According to defendants, Carlone's multi-year campaign against them using agency proceedings, state and federal court legal actions, attorney disciplinary proceedings, and complaints to the FBI, has had only one purpose—to harass them in violation of Rule 11(b)(1)'s prohibition against using the legal process to harass an opposing party.  See Defendants' Memorandum of Law in Support of their Motion for Sanctions under Rule 11 [Docket No. 37], pp. 12-14.  In addition, defendants argued that Carlone has repeatedly asserted meritless claims that have been rejected by both courts and administrative agencies in violation of Rule 11(b)(2), and that the Complaint's (and Amended Complaint's) threadbare allegations of negligence, without any supporting facts, violates Rule 11(b)(3)'s mandate that the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.  Id., pp. 14-17. Defendants seek sanctions in the form of (1) a permanent injunction prohibiting Carlone from pursuing future lawsuits, complaints, or charges of any kind against defendants,

their officers and agents in any court, agency, or self-regulatory organization, whether judicial, quasi-judicial, administrative, federal, state or local, without first seeking leave of court; (2) an award of attorney's fees and litigation costs incurred by defendants in defending this case and bringing this motion; and (3) dismissal of this action with prejudice. Id., pp. 18-22.

In response, Carlone asserted that he is handling this case pro se and lacks knowledge on the rules of Court. See Pl.'s Rebuttal, p. 1. Carlone then argued why he should be granted relief in this case, and stated his intent to report defendants' motion for sanctions to the FBI, and to file a complaint in the United States District Court, charging defendants' attorney with intent to commit malicious prosecution. Id., pp. 2-8. Carlone also asserted that if defendants did not settle his claim to his satisfaction—i.e., pay him either $34 million or $10 million and "free and clear marketable warranty deed to the union hall"–he would "file a civil lawsuit against each and every officer, ex-officer of Local 34 and officers of the Health & Welfare Pension Trust Company of Local 34." Id., p. 8, Exs. 7, 8.

Defendants replied that Carlone's response to the motion for sanctions was further evidence as to why he should be precluded from bringing any further legal proceeding without first obtaining leave of court to do so. Defs.' Reply.

Pro se litigants, like attorneys, must comply with Rule 11 of the Federal Rules of Civil Procedure, which states in relevant part:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b); Carman v. Treat, 7 F.3d 1379, 1382 (8th Cir. 1983) (finding that Rule 11 applies to pro se litigants).

Both monetary and non-monetary sanctions are authorized under Rule 11, however, "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) (concluding that the primary purpose of Rule 11 sanctions is to "deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts."); Kirk Capital Corp v. Bailey, 16 F.3d 1485, 1490 (8th Cir. 1994) ("[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending.") (emphasis added).

"When determining whether a Rule 11 violation has occurred, a court 'must apply an 'objective reasonableness' standard[.]'"  Pulaski County Republican Committee v. Pulaski County Bd., 956 F.2d 172, 173 (8th Cir. 1992) (quoting N.A.A.C.P.—Special

Contribution Fund v. Atkins, 908 F.2d 336, 339 (8th Cir. 1990), quoting O'Connell v. Champion Int'l Corp., 812 F.2d 393, 395 (8th Cir. 1987)).

Since 2007, Carlone has been seeking recompense for the Union's failure to refer him to work. First, he unsuccessfully asserted to the EEOC that the Union discriminated against him based on age and disability. Then in 2008, he unsuccessfully pursued a charge with the NLRB, alleging that the Union unlawfully refused to refer him for work because of his age and disability. Again, in 2009, he brought a case in this Court alleging, among other claims, that the Union improperly failed to refer him for employment, that case was dismissed and the appeal of the dismissal was dismissed in 2010.

Having failed to obtain any relief, Carlone turned his attention to the Union's attorney. From 2010 through June 2012, Carlone filed several complaints against the Union's attorney with the OLPR and the FBI. In January 2013, Carlone attempted to have the FBI arrest Union officers based on their discriminatory conduct.

From March 5, 2013 through March 25, 2013, Carlone initiated six state court conciliation matters against the Union, one of which led to the present matter before the Court via removal, and four petitions in state district court seeking to find the Union or its counsel in contempt, all of which were dismissed.

Even after being given the opportunity by this Court to amend his Complaint, Carlone failed to state a claim to relief that is plausible on its face. Moreover, after this Court filed an Order staying proceedings in this case and denied Carlone's motion to amend the complaint on December 6, 2013 (based in part on a failure to show good cause to extend the deadline for filing an amended complaint), Carlone attempted to

circumvent this and filed a new complaint in this Court. <u>See</u> Civil No. 14-579 (SRN/JSM) [Docket No. 1]. The facts underlying that action are primarily based on the Union's refusal to refer Carlone for employment and conclusory allegations regarding his benefits with the Union.[7]

Excluding the complaints to the OLPR (all of which were dismissed) and the FBI, Carlone has filed three agency charges, three cases in federal court, six state court conciliation matters (including the instant case which was removed to this Court), and four petitions with state court, all of which dealt with or arise out of the alleged underlying refusal by the Union to provide him with a referral for employment. To the extent a decision was rendered in any matter, Carlone's claims were determined to be meritless and that matter was dismissed. It is evident to this Court that Carlone has no intention ceasing his meritless legal campaign against the Union and its agents. In fact, Carlone has represented that his cause of action will be heard even beyond his death. <u>See</u> Pl.'s Rebuttal, p. 7. Moreover, Carlone has indicated his intention to file a civil lawsuit against each and every officer, ex-officer of Local 34 and officers of the Health & Welfare Pension Trust Company of Local 34 if he does not get the millions of dollars he has demanded, he has threated to report the Union to the FBI, and has threatened to bring a suit against the Union's lawyer for bringing the present motion for sanctions. <u>Id.</u>, pp. 7-8. Based on Carlone's long history of pursuing frivolous claims and threats to continue this pattern of conduct, the Court finds that Carlone is endeavoring to use the

---

[7]    As stated previously, on February 6, 2013, Carlone filed a claim in Ramsey County Conciliation Court claiming that the Union failed to properly manage his health and welfare plan, which was dismissed on the basis that Carlone had failed to submit the necessary forms to receive benefits, and on the basis that he had named the wrong defendant.

legal process to harass the Union and its agents in violation of Rule 11(b)(1). Consequently, the Court finds that Carlone has violated Rule 11 and that sanctions are in order.

The question then is what sanctions should be awarded to keep Carlone from continuing to harass the Union and its agents.

First, the Court recommends dismissal of the suit with prejudice as it is meritless. Nothing Carlone has filed with the Court suggests that his claim against defendants has any merit in substance, or that it is not preempted by the NLRA or time-barred.

Second, the Court finds that monetary sanctions will not deter him from filing additional cases. Carlone had sought to proceed in forma pauperis in several state actions and has most recently sought to proceed in forma pauperis in his latest federal court suit, Civil No. 14-579 (SRN/JSM). As such, this Court finds that Carlone most likely would not be able to pay any monetary sanctions levied by this Court.

Third, the Court considered whether it could rely on the in forma pauperis process to screen out any future meritless claims by Carlone. However, this process would not preclude Carlone from commencing suit in this Court if he did not petition for in forma pauperis status or from bringing administrative actions or complaints against the Union and its agents, and would not prevent actions brought by Carlone in state court that are removed by defendants to federal court.

The Court finds that the only avenue to prevent Carlone from continuing to harass defendants and their agents through the legal system is via a permanent injunction. Permanent injunctive relief is appropriate when a plaintiff shows (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.   eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006) (citing Weinberger v. Romero–Barcelo, 456 U.S. 305, 311–313 (1982)).   In determining whether a party faces a threat of irreparable harm, the Court considers the likelihood of future violations and whether an "injunction is necessary to prevent future violations." United States v. Articles of Drug, 825 F.2d 1238, 1248 (8th Cir. 1987).   Consequently, "a defendant's voluntary cessation 'is an important factor bearing on the question of whether a court should exercise its power to enjoin defendant.'"  Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc., 83 F. Supp.2d 1016, 1020 (D. Minn. 2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 283 (1982)).

This Court concludes that all of the elements necessary for permanent injunctive relief are present.   The Union has suffered irreparable injury by having to devote resources time-and-again to respond to Carlone's repeated and frivolous filings arising out of the same nucleus of facts.   Not including the actions taken against defendants' attorneys before the OLPR and the FBI, the Union has faced at least ten agency, state court and federal court legal matters brought against it arising out of Carlone's relationship with the Union.   Further, as discussed above, monetary damages are insufficient to compensate the Union, as it is a virtual certainty that such damages will never be paid.   In balancing the hardships between the Union and Carlone, it is evident that the Union and its employees and agents have suffered and will continue to suffer hardship in having to respond to Carlone's multiple claims in multiple forums, while the

hardship to Carlone is negligible.  After all, it is not a hardship to be enjoined from filing meritless and harassing lawsuits and claims with courts and agencies.  Lastly, the public interest would be served by enjoining future similar behavior by Carlone.  The public has right to rely on the orderly administration of justice, which has been undermined by his relentless and frivolous conduct.

It also is well accepted that where a party has demonstrated a pattern of frivolous, repetitious, malicious, vexatious, or harassing litigation, and where such litigation is likely to continue in the absence of equitable intervention, the court has the authority to enjoin that party from filing, continuing, or otherwise litigating his frivolous claims.  See 28 U.S.C. § 1651(a); see also Sassower v. Carlson, 930 F.2d 583, 584 (8th Cir. 1991) (requiring plaintiff who filed repeated, vexatious lawsuits naming as defendants the district court clerk and magistrate judge who issued a Report and Recommendation stating that his claims in another suit were frivolous, to seek leave of court before filing any further suits in the District of Minnesota); Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985) (stating that the courts have "an obligation to protect and preserve the sound and orderly administration of justice"); Zhang v. Equity Office Props. No. 06–2265 (MJD/AJB), 2007 WL 26324, at *11 (D. Minn. Jan. 3, 2007) (citing Stilley v. James, Nos. 02–2047, 02–2022, 2002 WL 31159298, at *2 (8th Cir. Sept. 30, 2002) (finding that when a litigant has frivolously litigated the same issues multiple times before, an injunction can be the appropriate remedy); Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co., 271 F. Supp.2d 142, 148-50 (D.D.C. 2003) (granting defendants' motion for an order prohibiting plaintiff from filing additional complaints without leave of court)  "In fashioning a remedy to stem the flow of frivolous actions, a

court must take great care not to unduly impair a litigant's constitutional right of access to the courts." Urban, 768 F.2d at 1500.  However, in appropriate circumstances a court may issue a very broad injunction.  Id. (enjoining plaintiff from "filing any civil action in this or any other federal court of the United States without first obtaining leave of that court) (emphasis added).

Therefore, given Carlone's obsession with his former Union, the Court recommends precluding him from filing any new lawsuits, complaints, or charges of any kind against defendants, their officers or agents (including against defendants' attorneys arising out of their past, present or future representation of defendants) in any court, agency, or self-regulatory organization, whether judicial, quasi-judicial, administrative, federal, state or local, without first seeking permission to file the matter from the court, agency or organization in which he seeks to commence the dispute.  See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1295 (11th Cir. 2002) ("Nor can we fault the scope of the injunction, except perhaps for being too narrow—but more about that problem later.  The injunction prohibited Riccard from filing any new "action, complaint, or claim for relief" against "Prudential, its affiliates, or subsidiaries [in] federal court, state court, or any other forum" unless he first obtained leave to file from the district court first.  The court stated that leave would be freely given if the new action did not involve Riccard's former employment with Prudential.  There was no abuse of discretion in the sanction the district court imposed against Riccard.  Three or four lawsuits over one employment relationship is enough."); see also Dixon v. Deutsche Bank Nat. Trust Co., 360 Fed. Appx. 703, 704 (8th Cir. 2010), cert. denied 131 S.Ct. 909 (2011) ("The district court also enjoined Dixon from filing any further lawsuits in the district court unless the

pleadings are signed, pursuant to Federal Rule of Civil Procedure 11, by an attorney admitted to the court, or a judicial officer has authorized the filing of such pleadings in advance.  In these circumstances, we believe it is appropriate to modify the injunction so that it prohibits Dixon, absent compliance with the listed requirements, from filing in the district court any further lawsuits related to the mortgage or foreclosure on his property.").  In addition, when seeking leave to file any lawsuit, complaint, or charge, Carlone should be required to certify that the claim or claims he wishes to pursue are new claims that have never before raised and disposed on their merits by any state or federal court.  Carlone must also certify that the claim or claims made in the proposed suit, complaint or charge are not frivolous, malicious, or brought in bad faith.  Finally, Carlone should be required to attach a copy this Report and Recommendation and any Order by Judge Nelson affirming this Report and Recommendation to any request seeking leave to file.

## IV.   <u>RECOMMENDATION</u>

For the reasons set forth above it is recommended that:

1.   Defendants' Motion for Sanction and Attorney's Fees Pursuant to Rule 11 [Docket No. 35] be **GRANTED** in part and **DENIED** in part as follows:

a.   Defendants' request for attorney fees and costs be denied;

b.   Plaintiff's suit be dismissed with prejudice; and

c.   Plaintiff be precluded from filing any new lawsuits, complaints, or charges of any kind against defendants, their officers or agents (including against defendants' attorneys arising out of their past, present or future representation of defendants) in any court, agency, or self-regulatory organization, whether judicial, quasi-judicial,

administrative, federal, state or local, without <u>first</u> seeking permission to file the matter from the court, agency or organization in which he seeks to commence the dispute. When seeking leave to file any lawsuit, complaint, or charge, plaintiff should be required to certify that the claim or claims he wishes to present are new claims that have never before raised and disposed on their merits by any state or federal court.  Plaintiff should also be required to certify that the claim or claims made in the proposed suit, complaint or charge are not frivolous, malicious, or brought in bad faith.  Finally, plaintiff should be required to attach a copy this Report and Recommendation and any Order by Judge Nelson affirming this Report and Recommendation to any request seeking leave to file.

2.      Plaintiff's Motion for Employment [Docket No. 54] be **DENIED** as moot based on the dismissal of this action.

3.      Plaintiff's Amended Complaint [Docket No. 55] be denied and this case be **DISMISSED WITH PREJUDICE**.

4.      Plaintiff's Motion to Remove all of the Defendants' Exhibits [Docket No. 60] be **DENIED**, as plaintiff has failed to set forth an adequate basis for the removal of all of defendants' exhibits in this action.

Dated: April 9, 2014

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 23, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **April 23, 2014**.